LipscoMb, J".
Bennett and wife filed their petition against Gamble, administrator of Richardson, alleging that they are the owners, and in possession of a certain negro girl named Grace; that the said girl, whilst so in their possession, was levied on by an execution in favor of the said Gamble, as administrator of Richardson, against one William Lynam et ah, as the property of the said Lynam; that the petitioners had given bond as required by the statute, and they pray that Gamble be made a defendant; that he be cited to appear at the next term of the district court, then and there to answer the same; that a jury be impaneled to try the issue to be made, and pray for damages and costs. A summons was issued, which, with a copy of the petition, was- served on Gamble, who appeared and answered, by denying the negro to be the property of Bennett and wife. On the trial, two bills of exception were taken by the plaintiff • — ■ the first, to the refusal of the judge to permit an amendment to the petition, averring a right by prescription in the plaintiff to the girl, the subject of the controversy.
The second, to the overruling the motion of the plaintiff to quash the execution, marked B, because Gamble, the administrator had not been made a party to it. The jury found a verdict, “that the slave, Grace, was subject to the execution.” The plaintiff moved for a new trial, on the following grounds. 1st. That the verdict is contrary to law and evidence. ‘ 2d. The court erred in refusing to instruct the the jury, as asked for by the plaintiff, that two years’ peaceable possession would give the plaintiff title; and, 3d. The court erred in instructing the jury that the title of the plaintiff derived under the sheriff’s sale was void. This motion was overruled, and the plaintiff excepted to the same. The following is substantially a statement of facts sent up to this court: “An execution in favor of Yarlin Richardson against Lynam et al. was levied on the girl Grace; she was claimed by the plaintiffs and bond given pursuant to the statute, the issue being the right of property.” It was proven that the negro girl levied on was the property of Lynam, one of the defendants in *(92) tbe execution, after the rendition of the judgment in favor of Richardson, and that she was levied on by the sheriff of Yietoria county, in the life time of Richardson. At the time the levy was made, Ly-nam requested of the sheriff the privilege of replevying, and for that purpose, induced the sheriff to leave the girl and go with him a short distance to town, to execute the bond, and obtain the surety. Whilst in town, Lynam eluded the sheriff without replevying, went home and ran off the negro and secured her. The sheriff about this time left for the army, and placed the matter in the hands of his deputy, who, being sworn as a witness, stated that Richardson, the plaintiff in execution, leaving town for the west, and aware of the fact that the negro was not in possession of the sheriff, instructed him to proceed and sell the property. On the day prior to the day of sale, he, the deputy sheriff, informed Lynam that the girl would be sold on the the next day, and requested him to bring her in, which he refused to do. The witness did not remember whether the girl was advertised or not, but on the day of sale, he put up to the highest bidder, the chance of the girl without appraisement; that she was not present or in view of the bidder or under control of the sheriff at the time, and the chance of her was purchased by Bennett and Prescott for ten dollars. The deputy sheriff executed a bill of sale, a copy of which accompanies the statement of facts. The judgment in favor of Richardson was admitted by both parties to be valid. The execution under which the first levy was made and the copy of the sheriff’s deed, and the indorsement of the sheriff, was ordered to be certified to the supreme court. It was proven that the girl was in the possession of Bennett and wife, from the fall or winter after the purchase was made, and continued in their possession up to the time when the last execution was levied. How they obtained her did not appear in evidence; the girl was about six years old at the time of the levy. The execution was issued on the 1st of May, 1840; sheriff’s retnrn, “came to hand 2d day of May, 1840; executed on the 5th day of May, on one negro girl named Grace, about six years of age, and one house and farm lot. . (Signed) Datet. MoDoNald, Sheriff Y. 0.”
“ The above negro girl was sold to Messrs. Bennnett and Prescott, on the day advertised. Dan. McDokald, Sheriff Y. C.”
The deputy sheriff’s bill of sale bears date on the 7th July, 1840. The last execution bears date ón the 7th July, 18If, and on its face, appears to be an original i/n the name of Varlin llicharson. and eme-ries no evidence on it that it was wilder the cont/i'ol of Gamble. We will first consider whether the court erred in overruling the plaintiff’s motion to quash the execution last issued and levied on the negro *(93) girl in tbe possession of Bennett and wife. There is a distinction between'a void execution and one that is only voidable. If only voidable from some defect in the process none but a party can except to it. But if it is absolutely void any person claiming an adverse interest to it can make the objection. This question was very fully discussed in the case of Collingsworth v. Horn, 4 Stuart and Porter, 237, and the above distinction acknowledged by the court. If then the execution under consideration is void, the claimant could not be called on to show title against it, because no property, could be subject to sale under a void process. The common law doctrine is believed to be well established, that an execution valid at the time it is placed in the hands of the sheriff cannot be suspended by the death of either of the parties, but the sheriff must go on to execute it. 2 Sel-lon’s Practice, title Executor; Bac. Abr. title Executor. And the reason assigned is, that as it is an entire thing, and having properly issued, its functions must be performed by the sheriff in obedience to its mandate. But if the fieri facias bears test after the death of the plaintiff or defendant it is void.'’ An original fieri facias at common law bore test the term at which the judgment was obtained and ran from term to term; that is to say, it issued from one term and had to be returned to the succeeding term. It seems to me that from the above rule the conclusion would be that, although the death of a party after the execution has issued will not abate it for the above reasons, that-it must go on and perform its appropriate functions. Yet if the money is not made and the process returned not satisfied, and an alias has to be resorted to, the legal representative of the deceased must be made a party. 3 Atk. 254. To this there is an exception — where a lien has been acquired, that lien must be kept up by the issuance of an alias admitting that the first execution was properly issued and that it acquired a lien such as could be kept up by an álias. Does the case under consideration come within the rule and has it been so continued as to sustain the last one issued? For if it can be-sustained without the name of the representative, it is solely on the ground of keeping alive the'lien. If this has been lost, the judgment would have to be revived in the name of the representative.
The statute in force at the date of the first execution in May, 1840, gives a lien on all the property of the defendant vn the county where the judgment is rendered, from the date of the judgment, provided, said lien shall cease to operate if execution he not sued out within twelve months from the date thereof and due diligence he not used to collect the same. 4 Laws of Texas, sec. 12, p. 95. The lien given from the date of the judgment has two conditions annexed, the issu- *(94) anee of execution within the time limited, and due diligence in collecting the same. The lien is given bj the observance of the first,' but it can only be retained by the latter. Would it be anything more than a reasonable construction of the term, due diligence, to say that after the return of the first execution not satisfied, the party would be required to try another writ, and to continue his efforts from term to term until he obtained satisfaction? This was the common law diligence necessary to keep alive a judgment. If there was a failure, of a single term after the original fieri facias had been sued out, no execution could issue, and consequently the judgment had to be made the foundation of another suit and judgment until the statute of Edward I. gave a scire facias to review a judgment. See Sellon and Bacon, cited above. With us the judgment can be revived by a scire facias. But to return to the execution under consideration. If due diligence has not been used the lien is lost, and the lien being gone, there is nothing to support an alias in the name of the original party and the judgment must be revived in the name of the legal representatives.
In the case before us the first execution issued in May, 1840, the judgment was obtained in April, so that the lien was secured so far as it depended on the issuance of the execution. Our laws ¿require that an execution should be returned to the succeeding term, which would have been in October. The process would then ha functus officio, it would then give no effect to the lien of the judgment, and that dormant lien could only be again brought into life and energy by an alias, or, in the words of the statute, by due diligence; and we have construed that diligence to be the use of the means given by law to keep it alive. If this was not employed the lien, it seems to me, was gone; and our statute being silent as to the mode of creating a new one it would be effected alone by the rules of the common law. The second execution, the one that has been the occasion of the present contest, was not issued until the 7th of July, 1843, more than three years after the issuance of the first, and near three years from the time when it was returned and had performed its office. It certainly cannot be supposed after such a lapse of time that the judgment was only dormant, and only required the issuing of another execution to arouse it into life and vigor. The reason assigned at a most remote period, even as early as Edward the First, why a party ought not to be permitted to hang back on his judgment or on a defunct execution and still retain his lien was said to be, that it would restrain trade and be productive of fraud in the selling and transferring of movable property; and it was said to be unreasonable that because *(95) there had been a judgment against a man, all his property should be tied up and no one permitted to purchase. Hence the common law presumption, if execution had not been sued out within a year and a day, that the debt had been paid, and also when sued out, unless it was kept alive by the issuing of a continued succession of executions which must appear on the docket. This presumption runs back into the history of the jurisprudence of our ancestors to a period when there was comparitively but little trade; and it would appear strange if in comparing the present condition of their descendants with their almost countless millions embarked in trade, the same reasons should not now be felt with ten fold force. As it has been before seen, the last execution was not sued out until near three years after the first had been returned. A period beyond the time that legislative wisdom has adopted as a bar to some of our most important rights was certainly far from the use of due diligence. The conclusion is, that diligence was not used to keep up the lien. That the last execution having issued as an original without any reference to the first, after such a lapse of time, and the lien not having been kept up by the use of the means the law allowed, no execution could have issued on the judgment until it had been revived in the name of the legal representative of Bicharson; and therefore the execution was void and ought to have been quashed.
We will now inquire into another point made in the court below and presented by the bill of exceptions.
That is, the refusal of the court to permit the plaintiffs to amend their petitition so as to set up their right by prescription to the slave in controversy. The proceedings in the court below were intended to be under the provisions of our statutes for the trial of the right of property. Laws of Texas, 1840, page 64.
By that act all that was required was simply an issue to be made up, as we believe, under the direction of the court; because the form in which it should be presented depended on the fact of the property levied on being in the possession of the defendant in the execution, or with the claimants. If with the former, the claimant assumes the affirmative; if with the latter, the onus is thrown on the plaintiff in the execution. This course was not pursued; but the claimants, after giving bonds under the statute, commenced an original and distinct suit by petition and summons, and the plaintiff in execution filed the answer. This course of proceeding certainly was never contemplated by the statute, and is productive of delay and unnecessary expenses. The claimants have not set up prescription in their petition, and if the case was to be tried as an ordinary one, there was no error in con *(96) fining the plaintiffs in their proof to their averments, nor in charging the jury that under the pleadings they could not recover by prescription. The evidence, however, showed that the plaintiffs were in, possession of the property when the exeeiition was levied. This, under the statute would have really made them the defendants, and thrown the’affirmative on the plaintiff in the execution; and, as defendants, they certainly could have offered the defense of prescription without the necessity of presenting the question, whether such prescription could give a right. The proceedings are so irregular, and such a departure from the statute, that it does seem that when the court was asked permission to amend, although it was not until after both parties had announced themselves ready for the trial, it ought to have been allowed. "VVe are fully sensible that we should act very cautiously indeed in revising the decision of the court below on a question of amending the pleadings; because it is, in most cases, so much, a matter for the sound discretion of the court that it would be extremely difficult for us to determine from the record, whether it onght to have been allowed. We have no doubt of our powers to do so when a proper case is made out on the record. The proceedings and the statement of facts show conclusively that the legal rights of the plaintiffs were not put in issue; and an amendment ought to have been allowed on such terms as would have been just to both parties. We do not decide whether prescription under our statute would give a right of action, or would only be matter of defense against one, as we do not believe the question is necessarily presented; because, under the circumstances the claimants were entitled to all the rights of a defendant in possession, when possession was sought to be disturbed. We will notice one other point in which it is supposed the court below erred, that is, in charging the jury that the claimant’s title from the sheriff was void. We do not design to discuss all the legal consequences growing out of the official conduct of the sheriff, connected with the execution of the first fieri facias; because the parties to be affected are not before us, and should not be condemned unheard. The sheriff’s return is before ns, showing the levy and a sale of only the slave; although other property is levied on, no account is given of it, but he does not appear to have asked leave to correct his return; he seems willing to abide by its legal consequences. Lynam, the defendant, from whom the slave was taken on the first execution, and who, if anybody, was entitled to the benefit of the law of ap-praisement, is not heard to complain of a deprivation of that right. We are not informed by the record of any facts, nor is there any principle of law in the face of the sheriff’s return that would author *(97) Ize the title so made by the sheriff, to be disturbed by another execution being levied in the same case on the property so sold. Fraud may have been perpetrated, and perhaps was, but from the facts we have nothing to do with it and there can be no question but that the plaintiff in execution has his remedy. It is therefore the opinion of the court that on the following three points, the court below erred: 1st. In not quashing the execution; 2d. In not'permitting the amendments so as to give the claimants an opportunity to set up the defense of prescription; and lastly, in charging the jury that the claimant’s title from the sheriff was void. The judgment is therefore reversed, and the proceedings in the court below set aside down to the bond for the trial of the right of property in the slave claimed, with instructions to the court below to cause an issue to be made up in accordance with this opinion.