CARMINE W. VICKERY vs. WILLIAM J. WARD — Appeal from Jackson County.

The statutory mode provided by the act of February 5, 1840, for trying the right to property levied upon by execution, is more simple and less expensive than an ordinary suit brought by the claimant of the property against the plaintiff in execution; and an exception to such a suit would be well taken, and sustained by the court.

But if the defendant fails to except, and answers to the action, it will be considered as a waiver of the benefit of the statute.

The liability of personal property to execution depends upon its actual condition at *the time* the levy is made. If it be *then* the property of the defendant in execution, it is liable; but if it had previously been sold to another, it is not liable, although the sale might have been upon terms which authorized the defendant in the execution to reclaim it upon the non-payment of the purchase money within a specified limited period.  [8 Tex. 33.]

In such a case, the plaintiff in execution might by bill enjoin the purchaser from paying the money to his vendor, and obtain a decree that it be paid to him, or upon the failure of the purchaser to make the payment, that the property be sold for his benefit.

The appellee in this case having obtained a judgment in the district court of Harris county against one Tarpley and another, sued out an execution to Victoria county, there being no property found in Harris, and had it levied upon a negro boy slave, as the property of Tarpley, which was then in the possession of the appellant.

The appellant replevied the slave, and brought a suit against the appellee in the ordinary form, by petition and summons, in the district court of Victoria county, to try the right of

property, alleging that the negro belonged to him at [**213**] the time of the levy. The appellee answered, and alleged the slave to be the property of the defendant in the execution, and therefore subject to the levy. The cause was removed by a change of venue to the county of Jackson, where it was tried, and a verdict and judgment rendered against the plaintiff.

At the trial it was proved that the appellant had been in possession of the negro for more than eighteen months before the levy, but that he held him as the property of Tarpley until the day previous to the levy, at which time F. Jones, Esq., as the agent of Tarpley, sold him to the appellant, taking his note for the payment of the purchase money in about four months after the sale, and with a stipulation that if the money was not paid at the maturity of the note the negro was to be returned to Tarpley. Mr. Jones testified that he was aware of the execution being in the hands of the sheriff at the time he sold the boy to the appellant, and that he made the sale to prevent and defeat the levy which he knew was intended to be made on the slave, but that he did not inform the appellant of the existence of the execution, nor did the appellant require of him his authority to make the sale. He further testified that the appellant did not pay the note given for the purchase money at maturity, nor had he paid it at the time of the trial, which was more than two years after its maturity. Another witness testified that Mr. Jones admitted that he sold the negro to the appellant on Sunday to evade the execution, which was levied on the following day, and that he had no authority to sell the boy, but that Tarpley would recognize the sale when he understood the reason of it.

At the trial, the plaintiff requested the court to give sundry instructions to the jury, which were presented in writing — some of these were given without modification; some as modified by the judge, and the others refused; but as the only one which was deemed important in the case, as presented [**214**] in this court, is incorporated in the opinion, it is unnecessary to notice them here.

*Robinson* and *Fischer*, for appellant.

*Webb* and *Denison*, for appellee.

Mr. Justice LIPSCOMB delivered the opinion of the court.

This was an action brought by the appellant, by petition and summons, against the appellee, to try the right to a slave levied on by an execution, in favor of the appellee, against one Tarpley. The verdict was in favor of the defendant, finding the slave subject to his execution.

This suit was not brought in conformity to the statutory provisions for trying the right of property, levied on by an execution, and claimed by a third person. That the statutory mode is the most simple, and least expensive, there can be no doubt. And had the defendant in this suit, who was the plaintiff in the execution, taken exceptions to the suit, the exception would have been well taken, and would have been sustained, Bennett v. Gamble, Adm'r, 1 Tex. 124; but no exception was taken by the defendant, and his appearing and answering to the action may be considered as waiver of the benefit of the statute. The appellant, who was the plaintiff, thought proper to bring his suit on his claim, and if not objected to by the other party, he could not object. The court having jurisdiction of the subject matter, it is believed to have been competent for it to sustain the proceedings adopted by the choice of the parties.

The only point made by the appellant, in seeking to reverse the judgment, conceived to be at all material, is a part of the charge of the judge to the jury. It is in the following words:

"That if the jury believed from the testimony that Vickery purchased, in good faith, from Tarpley's agent, before levy made by the sheriff, they must find for him," which was [215] given with this qualification: "That if they believed the facts stated by Mr. Jones that there was an agreement in the note that if the negro was not paid for according to the terms of the sale, that he was to be returned by Vickery, or that the vendor retained the right to resume the property, if not paid for according to said terms, that the sale was conditional and not absolute, so as to place it beyond the reach of defendant's execution." In this charge given, the judge is supposed to have erred, and been mistaken in the law.

To test the correctness of the charge given we will put this

question: Could Tarpley have lawfully taken possession of the slave, at the time the levy was made, the execution being out of the way? Or could he have a right at that time to have sued Vickery for withholding him? We suppose now the state of facts on which the judge charged the jury; if Tarpley had at that time no right in law to take the slave, or to sustain a suit for him, the slave was not subject to the execution, because it could not go beyond the right of the defendant in it. Now it will be seen from the record that Jones, in the testimony referred to in the charge of the judge, testified that he, as agent for Tarpley, sold the slave for five hundred dollars to Vickery, and took his note for payment some time in the month of July, then next following; that in the note there is an agreement by the said Vickery that if the note was not paid at maturity he would return the negro. The evidence shows that the sale by the agent of Tarpley was on the 5th of February, 1844, and the execution was levied on the day following. The condition for the delivery of the negro depended on the non-payment of the money at the maturity of the note, which was not until some four months after the time when execution was levied. If the sale was a *bona fide transaction*, Tarpley had no right to the negro until the happening of the failure to pay the note. The sale was perfect, so far as depended on him. The election was not left with him to take back the slave if he should choose to do so, in preference to taking the money. If such had been the conditions, [216] the ownership would not have been changed. The condition and the performance was, however, with Vickery. He could rescind the sale and return the slave, and he promised to do so, or to pay the money.

To put it in the strongest aspect for Tarpley, it was nothing more than a sale with a mortgage, and no right would accrue under the mortgage until the failure to pay the money it was intended to secure. Until then he could not resume his right of property in the slave, no more than if the payment had been secured by a mortgage on any other slave.

The parties' rights must be tried as they existed at the time the levy was made, and not at a subsequent period. If the

time for the payment of the note had passed and the money not paid, it might then have been contended that the legal right to the negro would have been in Tarpley subsequent to Vickery's right of equity of redemption, and would have been subject to an execution against Tarpley. But until the time for payment had passed, it is clear that Tarpley had no right in law to the slave.

If the transaction between the agent of Tarpley and Vickery had been perfectly honest and free from the slightest imputation of fraud, in the opinion of the jury, yet under the charge of the judge on the law of the case, on the point charged, they would have been compelled to find a verdict for the plaintiff in the execution, because the sale contained an agreement to return the slave if the purchase money was not paid when it fell due. The judge, in giving the charge, certainly must have supposed that the time of payment had passed at the date of the levy of execution; if that had been the fact, the charge would have been correct. But that not being the case, the property was not subject to the execution when the levy was made, because Tarpley's contingent lien could not be levied on. It could, however, have been secured by the plaintiff, by an injunction and petition, enjoining Vickery from paying the money to Tarpley or his agent, and praying that Vickery should be decreed to [217] pay the money, or that the slaves should be sold for the benefit of the plaintiff in the execution. In proceedings of this sort the rights of both parties could have been secured. The judgment is reversed and the cause remanded.