

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

October 15, 1957

Hon. Robert S. Calvert
Comptroller of Public Accounts
Capitol Station
Austin 11, Texas

Opinion No. WW-277

Re: Legality of refunding
inheritance taxes de-
posited pursuant to
Article 4388, V.C.S.,
if decedent is a non-
resident of Texas.

Dear Mr. Calvert:

We quote the following excerpts from your letter
requesting our opinion on the above-captioned matter.

"Clara S. Kelly died on February 6, 1957,
and an inheritance tax report was filed with
this Department on or about May 2, 1957, for
her estate by Joseph C. Jackson, an accountant
of Austin. The report states the decedent was
a resident of Travis County upon the date of
her death. /This report was sworn to by Eugene
J. Kelly, son of Clara S. Kelly./ The value of
the net taxable estate is $355,619.33 consist-
ing almost entirely of stocks and bonds located
in a safety deposit box in the American National
Bank of Austin. The only other property in
which the decedent had a taxable interest was
a life estate in a small house and lot valued
at $5,000.00 in Alhambra, California, and a
bank account of $1,030.00 in The California
Bank of Alhambra.

"Mr. Jackson was anxious to obtain waivers
of the inheritance tax lien on all the stocks
and bonds at an early date, so a hurried report
was made which reflected a tax due of $5,379.82.
Since the report was hurriedly made and we had
no opportunity to make an early examination, we
accepted the $5,379.82 and placed same in our
departmental suspense account as provided in
Article 4388.

"The State of California is now asserting a tax on this entire estate claiming the decedent was a resident of California at the time of her death.

"Mr. E. H. Smartt, Austin Attorney, has written us a letter in which he reaches the conclusion that the decedent was a resident of California and asks for a refund of the tax now in our suspense account.

"On the facts as stated in this letter and those given by Mr. Smartt, please advise this Department as to the domicile of this decedent. If you hold this decedent was a resident of California, also advise if this Department can legally refund said tax."

In addition to the facts set forth in your letter, we quote the following facts from Mr. Smartt's letter.

"A short history of Clara Sabrina Kelly would probably be helpful in determining the issues in question. Mrs. Kelly was originally a resident of the State of Ohio; her husband died about the year 1938, and thereafter she traveled between Ohio and California. Mrs. Kelly had two daughters living in Ohio and a son, Eugene J. Kelly, who moved to Austin, Travis County, Texas, from Kansas about 1942. In about 1938 or 1939, Mrs. Kelly went to California and bought a little home in Alhambra, and in 1942, she deeded this home to her five grandchildren retaining a life estate in herself. In 1942 she went back to Ohio and stayed some time, and in 1943, she came to Austin to live with her son, Eugene J. Kelly. Except for the property located in Alhambra, California, her estate consisted entirely of stocks and bonds, all of which she had delivered to her son, Eugene J. Kelly, and gave him a power of attorney with full authority to manage and control all of said stocks and bonds.

". . ."

". . . Mrs. Clara Sabrina Kelly, by instrument dated September 21, 1943, executed an elaborate trust agreement in which she designated her son, Eugene J. Kelly, as her trustee, with full power over her entire estate to manage and control the same for her benefit during her lifetime, and in this trust agreement she reaffirmed her will which had previously been made. In the latter part of 1943, Mrs. Kelly went back to California, she being then past eighty-three years of age, and never left Alhambra, California, until her death; after her death her body was taken to Ohio for burial.

"By instrument dated May 11, 1949, Mrs. Clara Kelly revoked her will and stated that it was her full and deliberate intention not to have any will in effect at the date of her death; so far as we have been able to ascertain this instrument of revocation was the last legal instrument ever signed by her.

". . .

"Probate proceedings were filed in Travis County under Section 180 of the new Probate Code, for the purpose of having the court determine that no necessity existed for administration and also for the purpose of declaring the heirship of Clara Sabrina Kelly. This action was taken solely for the purpose of providing a vehicle for the transfer, or sale, of the stocks and bonds which were carried in the name of Eugene J. Kelly, Trustee, for the estate of Clara S. Kelly. The Court found that no necessity existed for administration and found also that the estate belonged to the two daughters in Ohio and the son in Texas, share and share alike.

"Since the latter part of 1943, all business transactions concerning the stocks and bonds belonging to Mrs. Clara Sabrina Kelly have taken place in Austin, Travis County, Texas, and such transactions have been handled by her son,

Eugene J. Kelly. The stocks and bonds were kept in a safe deposit box at the American National Bank, in Austin, and all dividends were payable to Eugene J. Kelly, Trustee. All income tax returns were filed by the son with the Internal Revenue Department in Austin, Texas. /These income tax returns showed the residence of the beneficiary of the trust, Mrs. Kelly, as being Austin, Texas./ All bills of Mrs. Clara Sabrina Kelly were forwarded to Eugene J. Kelly, in Austin, Texas, and payment made through a bank account established and maintained in the American National Bank in Austin.

"We have been unable to find any written evidence of an intention on the part of Mrs. Clara Sabrina Kelly to return to Austin, Texas, and in talking with neighbors in Alhambra, California, we have been unable to find any statement by her expressing such intention."

We have been furnished with the following instruments: (1) Application to Probate Court; (2) Two Waivers of Citation; (3) Copy of Order of Probate Court; (4) Two copies of Power of Attorney; (5) Copy of Trust Agreement; and (6) Copy of Revocation of Will.

The application to the Probate Court states that the decedent died while in the State of California and at the time of her death had her resident in Travis County, Texas.

The trust instrument embodied a will (subsequently revoked) in which the decedent recited that she was a resident of the County of Los Angeles, State of California.

The Power of Attorney likewise recites that the decedent was a resident of Alhambra, California. The Revocation of Wills executed at Alhambra, California, May 11, 1949, contains no recitation as to residence.

Article 7117, Vernon's Civil Statutes, reads, in part, as follows:

"All property within the jurisdiction
of this State, real or personal, corporate
or incorporate, and any interest therein,. . .
whether belonging to inhabitants of this
State or to persons who are not inhabi-
tants. . . which shall pass . . . by the
laws or /sic/ descent or distribution. . .
shall upon passing . . . be subject to a
tax. . . in accordance with the following
classification; provided, however, that the
tax imposed by this Article in respect to
personal property of non-residents (other
than tangible property having an actual
situs in this State) shall not be payable:
(1) if the grantor or donor at the time of
his death was a resident of a State or
territory of the United States which, at
the time of his death, did not impose a
transfer or inheritance tax of any character
in respect of personal property of residents
of this State (other than tangible personal
property having an actual situs in said
State); or (2) if the laws of the State
or territory of the residence of the grantor
or donor at the time of his death, contained
a reciprocal provision under which non-
residents were exempted from transfer or
inheritance taxes of every character in
respect to personal property (other than
tangible personal property having an actual
situs therein) provided the State or terri-
tory of residence of such non-residents
allowed a similar exemption to residents
of the State or territory of residence of
such a grantor or donor."

Stock and bonds are intangible personal property.
Since California does not tax the intangible property of
non-resident decedents who were residents of a State or
Territory of the United States, no taxes would be due
the State of Texas in this case if Mrs. Kelly was domiciled
in California at the time of her death.

The following definition of "domicile" is given
in 28 C.J.S. 1, Domicile, Sec. 1:

"Domicile is the legal conception of
home, and the relation created by law be-
tween an individual and a particular

locality or country. The term has been
variously defined, the definitions agree-
ing substantially on the elements of a
true,fixed home, habitation or abode,
where a person intends to remain permanently
or indefinitely, and to which, whenever
absent, he intends to return."

The above definition was quoted by the Court in
Stone v. Phillips, 171 S.W. 2d 156 (Tex. Civ. App. 1943,
aff'd., 142 Tex. 216, 176 S.W. 2d ███, 1944).

The acquisition of a domicile of choice is en-
tirely a question of residence and intention. In other
words, to have effected a change of domicile from Ohio
to California there must have been an actual residence in
California and an intention on the part of Mrs. Kelly to
remain there or to make it her home. It is not necessary
that the intention to acquire a new domicile should exist
at the time of initial residence,but such intention may be
formed thereafter. The foregoing general principles are
supported by the authorities contained in 28 C.J.S. 11-14,
Domicile, Sec. 9.

Assuming that the facts which have been furnished
you are true, it appears to us, primarily from the fact
that Mrs. Kelly was in Texas, living in the home of her son,
for less than a year, that Mrs. Kelly was a resident of
California; however, the facts are sufficiently conflicting
in this case that we cannot say as a matter of law that Mrs.
Kelly was domiciled in California. This office does not
pass upon questions of fact.

If you should determine that Mrs. Kelly was domicil-
ed in California, we have concluded that you would be author-
ized to refund the money in view of the provisions of Article
4388, V.C.S., which reads in part as follows:

"The State Treasurer shall receive daily
from the head of each Department, each of
whom is specially charged with the duty of
making same daily, a detailed list of all per-
sons remitting money the status of which is
undetermined or which is awaiting the time
when it can finally be taken into the Treasury,
together with the actual remittance which the
Treasurer shall cash and place in his vaults
or in legally authorized depository banks,if
the necessity arises. . . . A deposit receipt
shall be issued by the Comptroller for the

daily total of such remittance from each
Department; and the cashier of the
Treasurer's Department shall keep a cash
book, to be called 'suspense cash book,'
in which to enter these deposit receipts,
and any others issued for cash received
for which no deposit warrants can be issued,
or when their issuance is delayed. As soon
as the status of money so placed with the
Treasurer on a deposit receipt is determined,
it shall be transferred from the suspense
account by placing the portion of it belong-
ing to the State in the treasury by the
issuance of a deposit warrant, and the part
found not to belong to the State shall be
refunded." (Emphasis supplied)

## CONCLUSION

Since this office does not pass upon questions
of fact, and since in this case the submitted facts per-
taining to the decedent's domicile are conflicting, we
are unable to advise you as to the domicile of the dece-
dent. Should you determine that the decedent was domiciled
in California, you would be authorized under Article 4388,
V.C.S., to refund the inheritance taxes heretofore paid.

Very truly yours

WILL WILSON
Attorney General

By: *Marietta McGregor Payne*
Marietta McGregor Payne
Assistant

MMP/fb
APPROVED:

OPINION COMMITTEE
George P. Blackburn, Chairman

W. V. Geppert

B. H. Timmins

John B. Webster

REVIEWED FOR THE ATTORNEY GENERAL

By: James N. Ludlum