Hemphill, Cb. J.
The first error assigned is the overruling of the demurrer to the plaintiffs’ petition. This I shall consider together with the third, which is, that the court erred in sustaining the demurrer to tiie amended answer of W. S. Hall, administrator of the deceased.
In this answer the defendant avers that he took out letters of administration upon the estate of the deceased in December, 1845; that this fact was duly published, and creditors notified to present their claims; and that the claim now sued upon was not presented within one year after the grant of administration, &c.
This was demurred to, on the ground that the claim being a judgment of record against the deceased in his lifetime, the plaintiff was not bound to present the same, as in the said plea is supposed, &e. The demurrer was sustained, and we are to consider whether this were rightly done; or, in other words, whether the previous presentation of the claim to the administrator be or not essential to support tire action.
A sjjace of nearly three years from the publication of the administra!or had elapsed previously to the commencement of the suit, and three systems of rules and regulations in relation to the estates of deceased persons had, during that period,'been in force. But they were substantially uniform in the provision requiring, as an essential preliminary to tiie institution oí a suit, that a ;iaim for money should be presented to the administrator. The seventeenth section of the law of 1840 is to the effect that no bearer of a claim for money shall commence an action before presenting his claim. The fifteenth section of the act of 1846 declared that no action should lie on a claim before its presentation for acknowledgment; and by other sections of the act, tiie claim was not limited to a demand for money, but embraced also demands for personal property or for land. The fiftieth section of tiie act of 1848 inhibits the holder of claims for money from suing the executor or administrator, unless tiie claim, properly authenticated, lias been presented to such executor or administrator, &c. It clearly appears, then, that by none of the laws regulating- the proceedings in Probate Courts, in force since the grant of administration, lias the bearer of a claim been exempted from the necessity of presenting liis claim for approval or rejection ; and this claim can form no exception to tiie general rule, unless it can be shown that it is not within tiie scope and intent of the provision, or that no benefit to tiie succession could be attained by the performance of tiie act enjoined.
In tiie cases of Gaines v. Garrett and Cole v. Robinson, it was held that, under the facts presented, it was not necessary that the claims should have been presented, to authorize tiie institution of suit. But tiie demand under consideration does not come within either of the classes represented in those suits. It is true that it is a judgment of a court of record; and in this particular it is assimilated to tiie claim in the case of Cole v. Robinson. Tiie reasons which exempt a judgment from the operation of the rule requiring tiie pi-esent-ation of claims are, in that case, set forth at large. The expressions are general, and some of the reasoning, if detached from the context, is sufficiently comprehensive to embrace all judgments of record. But this, in a subsequent portion of the opinion, is expressly restricted to judgments which had not, by lapse of time and the negligence of the plaintiff, become dormant, so as to have lost their liens, and which had no vitality except as foundations for new suits. If they bad lost their liens and become dormant, it was said that, perhaps in such cases, it was essential that they should be presented and rejected before being sued upon.
In tliis case there was hut one execution issued, which was returned in July, 1843. By the act of Fein-nary 5th, 1840, the judgment operated as a lien (in all the property of the defendant, situated in the county in which the jndg- *139 menfc was rendered, ii execution were issued within twelve months and due diligence used to collect the same. In this case the lien liad been extinguished" for several 3'ears before the commencement of suit. The judgment was dormant and liad no force, except as constituting a foundation for a new actiou. The due diligence contemplated by the act of 1S40 was defined, in the case of Bennett and Wife v. Gamble, (1 Tex. R., 124,) to be the issuing of another, after-the return of the first execution not satisfied ; and that the effort should be continued from term to term until satisfaction had been obtained. I-Iere the plaintiffs desisted, after the return of the first execution, from further prosecution of their rights. The property now attempted to be subjected to the payment of this debt was always within reach of tlie process of the court; and the pretense, if that were available, cannot be set up, that all such efforts would have been idle and nugatory. • Whatever may have been tlie result of such attempts, it i.s clear that the lien of the judgment lias been lost by the negligence of tlie plaintiffs ; and their demand is but a claim which cannot be enforced against the estate, unless it has been assented to by the administrator and approved by tlie chief justice of the county court, or has been established by a judicial proceeding for that purpose.
If the lieu had been preserved, it might have been enforced, irrespective of the assent or other action of the administrator. The death of the debtor would not have disinemnbered his property of the lien ; and as this could have been satisfied under judicial process, without tlie necessity of a new suit, and as the assent of the. administrator and the approval of tlie chief justice could not have imparted to tlie judgment a higher sanction, there is no reason why this assent or approval should have been sought by the creditor; but as the judgment has been suffered to become dormant, ami cannot be revived or have operative force, unless by an action or a proceeding with that object in' view, the claim i.s not distinguishable from tlie general mass of demands against tlie succession, and falls within tlie rule requiring presentation to the'administrator before suit can be brought for its establishment. The terms of the statute are comprehensive, embracing in their literal import all demands for money, and necessarily excluding all exceptions where the statute lias provided none, unless they be snch as plainly come within the purview and intention of the law, or be founded on extraneous considerations of equal or paramount sanction or force.
In the case of Cummings v. Jones, (Dallam, 532,) it was held that the petition must contain an allegation of a demand and refusal by the administrator, and. that it was equally necessary that they should be proven. This rule lias since been frequently affirmed, and lias all the authority derived from uniformity of decision. One of the points at issue, and which must he established in all snch suits, is as to tlie presentation of the claim; and the action of the court in excluding the defense of the administrator, in which this issue was distinctly made, is clearly erroneous.
Oil recurring to the petition, there will bo found the allegation that the plaintiffs had caused the said judgment to be presented to the administrator for settlement and allowance, and that tlie said administrator, while, not denying the justice of the claim, liad refused and neglected to pay the same, alleging that the estate of the defendant was wholly insolvent, when, in truth, all of the property mentioned i.n the petition was liable for the payment of said judgment.
If this allegation have any legal meaning, or be intended to describe any acts of tlie parties by which their rights could ire legally affected, it might be taken to the purport that the claim 'had not only been presented to, but had been approved by, the administrator. If so, there was no necessity to pray for a revival of the judgment, as against the administrator. The claim, on application, would have been ranked a mong the acknowledged debts of tlie succession, and tlie rights of the plaintiffs to follow the property into t he hands of third persons would have been perfect. The administrator, though joined, would have occupied but a subordinate position in the suit. He would be made *140 a party, in order that the truth of the allegation relative to tlie alleged insufficiency of the assets in his hands might be shown, and in order that if the conveyances be set aside the property should be restored to him for duo administration. (2 Hill Chan. R., 611.)’
If the allegation in the petition be construed to mean a presentment to and rejection by the administrator of tlie claim, then it might be questionable whether an action to set aside tlie conveyances as fraudulent could be sustained until the plaintiff’s character as a creditor be established by a judgment of a court of justice; and many authorities to that effect might doubtless be cited. I incline to tlie opinion, however, that if a claim be not acknowledged by the administrator, and a suit for its recognition becomes necessary, the administrator and the parties claiming under the alleged fraudulent transfer may be joiued, and that tlie whole matter, as well in relation to the validity of the claim as to the liability of the property, maybe determined in one suit. In fact, tlie holders of the property have a much more cogent interest in contesting tlie legality of the claim than lias the administrator, and they should at once he permitted to set up such defenses as may exist.
It lias been contended that the allegation does not aver any such facts in relation to the notification of tlie claim to and its disallowance by the administrator, as are made, under the law, a preliminary essential to the institution of a suit. If we may judge from the acts of the plaintiffs, hills would seem to have been their opinion. They did not rely upon tlie averment. They offered no proof under it; and had not the court ruled, in effect, that none was necessary — that tlie facts, if established, were not essential to the plaintiffs’ lights— it would be clear that whatever might be the signification of tlie terms, taken in their usual acceptation, yet that the pleader liad not, by the averment, intended to allege that the claim liad been presented to and rejected by the administrator. But as the language employed may have been intended to indicate the facts of presentation and disapproval, and, as liberally construed, they arc susceptible of that signification, and as, in consequence of the ruling of the court, the plaintiffs may have omitted the adduction of the proof necessary lo support tlie averment, we are of opinion that the petition should not be dismissed as legally insufficient, but that a new trial be awarded, and that tlie facts, if they exist, in relation to tlie presentment of the claim, &c., which are necessary lo maintain tlie action as against the administrator, may be adduced.
It was urged that the claim would bo barred if not presented within twelve months after the grant of administration. Such would have been the effect of non-claim had tlie probate law of 1840 continued in force. But this was abrogated before tlie expiration of twelve months; and, under the subsequent laws, the claim was postponed, hut not barred, except by tlie general laws of limitation.
It is assigned for error that the court overruled all tlie pleas of the guardian acl litem setting up tlie statute of limitations. Tlie several periods of two, three, five, and six years were pleaded as having elapsed since the accrual of the cause of action and in bar to its prosecution. They were overruled, as stated in tlie record; ljut on wliat ground, we arc not informed. The plaintiffs, in their exception to tlie pleas, assumed that there was no law limiting the plaintiffs’ right of action on the matters in tlie petition to any of tlie periods set forth in the pleas of tlie defendant.
In their argument the appellant's insist that the plea of limitation of five years, at least, is a good bar to the action ; and, in support of tlie position, they refer to tlie lGtli section of the act of limitations, (art. 2392, Dig.,) which, in substance, declares that lie, she, or they who shall have had five years like peaceable possession of real estate, cultivating', using, or enjoying the same, and paying taxes thereon, if any, and claiming under a deed duly registered, shall be held to have full title, precluding alL claims. These expressions are as emphatic as they are comprehensive. There is in the terms no exception in favor of any private title whatever. The peaceable, adverse posses *141 sion of lands for five years, under a duly-registered deed, is declared to be “full title, precluding all claims.” This extends as well to a claim for the direct recovery of tiie land as to have it adjudged the property of a debtor and then subjected to the payment of his debts.
The appellees contend that the holders of property under a sale made to defraud creditors are trustees; and that the statute does not run in cases of trust or fraud.
In regard to the operation of statutes of limitations, in eases of trust, many loose notions have prevailed; but it is not my purpose in this case to enter into an extended discussion for the purpose of showing the restrictions under which this doctrine is now understood and applied in modern cases of approved authority. It will be sufficient to state, that implied or constructive trusts (that is to say, whore parties claiming in their own right are made trustees by implication) are not exempt from the operation of tiie statute. A trust, (o be exempt from tiie bar, must be direct, technical, and continuing, and exclusively cognizable in courts of equity, under systems in which the distinction between'the common law' and the chancery jurisdiction is preserved. Tiie rule in relation to resulting, implied, or constructive trusts is stated in the authorities to be well settled, that where a claim is made, after a great length of time, against the holders of such trusts, tiie statute of limitations, as well as presumptions from lapse of time, will apply. (17 Ves. R., 88; 7 Johns. Chan. R., 90; 1 Watts. R., 275; 1 McCord Chan. R., 314; Angell on Limitations, pp. 161, 162, 174, 508.)
With reference to the effect of fraud in defeating the bar of the statute, many authorities might be cited, from which the conclusion might he deduced, as applicable to our system of procedure, that fraud or its concealment, under onr statute of limitations, does not form an actual or virtual exception to its operation.
Several courts of the highest authority have hold that fraud does not prevent the running of the statute at law.- The reason is, that in statutes of limitation tiie times at which actions shall be brought at law are specified. It is declared that they shall be brought within those periods and not after; and certain exceptions, as in cases of disability from infancy, coverture, and the like, are provided for; that courts of law, to whom such statutes are addressed, possess no dispensing power; they can neither add to nor impair their provisions ; and that it would be an assumption of legislative power to allow of any proviso in addition to tiie exceptions created 'in the statute. (20 Johns. R., 33; 5 Wend. R., 202; Angell on Limitations, chap. 18, p. 188, and tiie authorities cited from Virginia, North Carolina, South Carolina; see also Hard. R., 258; 3 Litt. R., 183.) This doctrine is based on the want of power to introduce an exception where none is found in the law. But inasmuch as statutes of limitation are generally not addressed to courts of equity, and do not, in express terms, embrace suits in that jurisdiction, those courts, while admitting the authority of such statutes, and adopting them in their procedure, by analogy, to the rules at law, have, in their constructions of the statutes, introduced exceptions to their operation ; and one is, that tiie statute will not corn menee running from the commission, but only from the discovery of the fraud. And here it may be observed that this exposition is adopted by many of tiie most respectable authorities, as being applicable as well to courts of law as to courts of equity, and that the statute would not operate in courts of law until a party affected by tiie fraud is conscious of it. (Angell on Limitations, pp. 193, 194, 195; Mass. C. C. R., 149, as reported in Angelí, and other authorities cited in Angelí.) There is, therefore, a conflict of opinion on this point.
But if the rule of interpretations first referred to be sound, and if a court Of law cannot permit fraud undiscovered to suspend the operation of the statute without an assumption of legislative power, then fraud, under our statute, cannot defeat its bar in any case whatever. The distinction between law and equity as separate jurisdictions is, with us, not recognized. The statute *142 is addressed to a court possessing a blended chancery and common-law jurisdiction. It is of the like imperative force in all cases to which it extends, whether they involve legal or equitable rights, or depend for their decision on the principle of law or equity.
I have thrown out these suggestions, in order that they may lead to a more thorough discussion of the true rule of construction as applicable to our statute under our blended judicial system, and that this may be placed on such general principles as will, without intrenching upon legislative authority, effectually carry out the law according to its true intent and object; and, without further remark as to this point of construction, I will but very brielly allude to tlie ground on which the court probably excluded the pleas of tlie statute; aiul this is. that the deed was totally void as against creditors; that it was a nullity, and did not divest the vendor of Ills title, and could not, therefore, be made tlie foundation of prescription by adverse possession. In Roberts on Fraudulent Conveyances, p. 520, it is said that a fraudulent estate is no estate in land; that, it forfeits tlie protection of every statute which gives confirmation to doubtful titles; and, while a disseizor has the benefits of tlie statutes of fines and limitations in support of his wrongful title, a title acquired by covin is indefinitely open to be disputed; and even acts, as well judicial as other, which of themselves are just and lawful, if infected with fraud, are, in judgment of law, vicious and unavailing; that all the partialities of the law expire under its antipathy to fraud, &c. This is strong language; and, if not entirely sound, is certainly a plausible view of tlie effect of a deed which is declared to be utterly void. But, on examination, we shall find from many cases of unquestionable authority that a title acquired by covin is not indefinitely open to be disputed, and that the statute will run in favor of an adverse possession under sncli title from the. time that the circumstances of tlie fraud are discovered.
In Prevost v. Gratz, 5 Cond. R. U. S., it is said, that where fraud is imputed and proved, length of time ought not, on tlie principles of eternal justice, to be admitted to repel relief. On the contrary, it would seem that the length of time during which the fraud lias been successfully concealed and practiced is rather an aggravation of the offense, and calls more loudly upon a court of equity to grant ample and decisive relief. But length of time necessarily obscures all human evidence ; and as it thus removes from the parties all the immediate means to verify tlie nature of tlie original transactions, it operates by way of presumption in favor of innocence and against any imputation of fraud.
In Bonny v. Ridgard, 4 Bro. C. C., 138, reported also in Beckford et al. v. Wade, 17 Ves. R., 98, Lord Kenyon refused to grant relief against a fraudulent purchase, after a great lapse of time- — being nearly twenty years after tlie youngest child came of age — (it being admitted that tlie purchase was originally fraudulent, and that the defendant must have been held to be a trustee bad tlie suit been brought in proper time.) (Vide Angelí on Limitations, p. 50S.)
In these cases the claims were defeated by the operation of lapse of time, and not by the expiration of any period fixed by a statute of limitations; but tlie principle is the same.
In Tennessee, the effect of adverse possession under a title obtained through fraud lias been frequently considered; and it lias been held that tlie fraudulent grantee may plead and rely upon the statute of limitations in bar of a bill filed by the creditor of tlie grantor.
This doctrine was advanced and maintained in the very learned and elaborate opinion pronounced in the case of Porter, Lessee, v. Thomas Cocke. (Peck R., 30.) After thorough discussion, it was again affirmed in Reeves v. Dougherty, (7 Yerg. R., 212 ;) and in Jones v. Read'it was said, that according to all the modern authorities, tlie statute would run in favor of possession, and operate to protect a title acquired by fraud. (1 Humph. R., 346; Id,, 357; 7 Id., 367.)
In tlie important case of Humbert v. The Trinity Church, (24 Wend. *143 R., 587,) decided by the court of errors in Hew York, it was held-that neither fraud in obtaining or continuing the possession or knowledge on the part of the tenant that his claim is unfounded, wrongful, and fraudulent will excuse the negligence of the owner in not bringing his action within the prescribed period; nor will his ignorance of the injury, until the statute has attached,' excuse him, though such injury was fraudulently concealed by the contrivance of the wrongdoer. In the opinion delivered by Mr. Justice Cowen in this case, he refers to several of the decisions in the State of New York on the statutes of limitation. In reference to title claimed under adverse possession lie says, that “ statutes limiting real actions generally operate in favor of the men who cultivate the soil or inhabit the dwelling-houses of the country, and cannot discriminate between the rich and the poor, the powerful and the weak, the wise and the ignorant. Looking at their tendency to encourage men, not only in the pursuits of agriculture, but every great interest of the nation, an argument of policy arises for their equal and steady application, even more strong than that of statutes which are passed to limit personal actions. All, however, are framed on the most salutary principles of general policy. They have, with great propriety, been termed statutes of repose. They fix a term, broadly marked and easy of proof, at which litigation is arrested, beyond which every man is able to pronounce that his possessions are no longer open to disturbance. The great object, no doubt, was to interpose the presumption arising from delay against the loss of evidence and the fictions of perjury. But, in this view alone, neither open wrong nor established fraud could be admitted as an exception without striking at the principle itself,”&c. (Id., 609.) The judge reviews the case of Livingston v. The Pern Iron Company, in 9 Wendell, 511, (a book which is not accessible to mo.) and states that the statute of limitations was not in question in that case; that the defendant had ho actual possession, but only a paper title ; that in the ease of Hendricks v. Andrews, 7 Wendell, 152, even actual possession claiming under a void deed was denied to be adverse for the purpose of disqualifying the real owner to convey, though clearly, since the decision in Frombois v. Jackson, (8 Cowen,) that would not be so of a deed invoked to make out a possession within the statute of limitations. For this purpose the judge understood that case to hold it good, although void both in respect to a want of title in the grantor and on its"face. “In short, (he adds,) if the right be claimed under a void deed, it is not therefore less available than a claim without deed, which is yet admitted to be a bar. The question is on the quo animo, the intent — not, I take it, as was suggested in Livingston v. The Pern Iron Company, the intent to claim honestly, but the intent to claim at all, right or wrong, with or without knowledge that another has title. The statute, in terms, bars the man who has been out of possession for twenty 3rears; and no one is the less out of possession because the one who is in may know that his possession is tortious,” (Id., Oil;) that this strictness was not founded on any favor to the man who may be supposed to have committed the fraud and kept it out of view till the statute shall have run against the injury. It is the impossibility of deciding, after a certain time, whether any fraud has been committed or not. (Id., 617.) In the case cited, the alleged fraud from which it was sought to withdraw the protection of the statute had been committed four full generations before the iiling of the bill; not a human being had been alive for generations who could speak to the question; but, on the principle that a title acquired by fraud is indefinitely open to be disputed, it would be immaterial whether the inquiry into the fraud be prosecuted fifty, one hundred, or five hundred ju;ars after it was committed. The court and jury must guess as well as they can whether there be fraud in the transaction or not.
There are doubtless numerous cases to be found in which a different rule has prevailed, and in which it has been held that possession under a void deed cannot invoke the aid of statutes of limitation. In the case cited, from Wendell, reference is made to the case of Cholmondley v. Clinton, (2 Jac. & Walk., 1,) in which fraud is enumerated among the disabilities preventing the *144 bar oí tiro statute. I have not this case before me, nor others in which the point has been ruled, nor is it material that they should be examined, as it is not my intention in this case to extract from 'the conflicting authorities any positive rulo decisive of the question arising on the plea of tiie statute. The subject has not been sufficiently examined. It has not received that elaboration of argument nor investigation which' would justify the adoption of any rule which would be conclusive upon the action of the court. The observations are made principally for the purpose of stimulating research, and the question is left open for future decision. The pleas of the statute are to be permitted to staud; and evidence of adverse possession may be introduced to sustain the defense, but without prejudice to the question as to tho sufficiency of the pleas or of adverse possession to protect (.lie title.
Noth 40. — Judgments must be presented as other claims for money. (Birdwell v. Kauffman, 25 T., 191 j Converse v. Sorloy, 39 T., 515)
Note 47. — The fraudulent concealment by a defendant of the plaintiff’s cause of action, or of the subject-matter of tho litigation, will prevent the running of the statute. (Munson v. Hal-lowell, 26 T., 475; Ripley v. Withee, 27 T., 14.)
No appeal was taken from that portion of the judgment which was in favor of the defendants ; no objection has been urged, against it in this court. The appellant's complain only of so much of the judgment as is against them. This they seek to have reversed. So much of the decree as is in their favor has not been brought before us for revision, and it will therefore he left untouched. And it is ordered, adjudged, and decreed that so much of the judgment as is against the appellants be and the same is hereby reversed, and the cause remanded for farther proceedings.
Judgment reversed.