Lipscomb, J.
It has been contended by the appellee, that only one question is brought up for revision in this case, and that is, whether the execution should be quashed or not; that the question as to the levy and return is not presented; that the record of the judgment uses the word motion, and by strict grammatical construction, it could embrace but one motion; and that it would be left uncertain, as to which of the two motions were intended to be operated on, but then, they both appear to have been before the court and the bill of exceptions shows that they were both overruled. The only construction we can give the judgment and give to it any effect is to make it embrace both motions. There is certainly a manifest distinction between quashing an execution and annulling or setting aside the leyy and return thereon; for the power of the court may well be questioned to *(362) quash an execution after it has been into court, and performed its office, and had become functus officio; hut the levy and return would still be in a condition to be acted on by the court. Sometimes from a want of precision they seem to be used as convertible terms, such as the execution ought to be quashed, when the levy and return is intended. They are, however, both before us, and the first in order is the motion to quash the execution. We might dispose of this by a reference to the case of Toler & Crosby v. Ayres, decided at this term, that an execution cannot be quashed after it has performed its functions and been returned. The ground of the motion, however, may receive a passing notice. It is alleged that it was improperly issued. If so, the appropriate remedy would have been by a supersedeas, applied for in proper form, before it had performed its office. We shall, however, in the course of our investigation, return again to this execution in discussing the circumstances under which it issued, and its sufficiency to support the levy and return. There is nothing in the second ground assigned for quashing the execution, but as it is again presented in the second motion, we will dispose of it now. It is alleged that ,the clerk had not taken the oath prescribed by the constitution at the time he issued the execution. This is true, nor was he required by the constitution to have taken it at that time. The constitution only required the officers appointed or elected under it to take those oaths. In this instance the clerk was acting under the laws of the republic, and had been duly elected according to those laws; and by the terms of the state constitution, he was qualified to continue the discharge of the duties of his office until superseded under the new organization under the state constitution, and the organization did not take place until sometime after the official act complained of. We now come to the motion to quash the levy and return made on the execution.- In reviewing the judgment of the court below in refusing to quash the levy and the return made by the sheriff, we do consider ourselves in anywise restricted to the grounds assigned by the counsel in the court below, why his motion ought to have been granted. We shall confine ourselves to the motion, bu1¿ not to his particular reasons. If he has offered an insufficient reason when there are others good in principle and law, the bad reason will be rejected and the law must prevail without regard to other matters that may have been erroneously thought available.
On a motion to quash, annul or set aside a levy made on the return on the execution, we may look to the execution and see if it carries on its face sufficient warrant for such levy and return. We may look back to the judgment, not for the purpose of reversing or of reform *(363) ing it, but to ascertain if it affords authority for the issuance of the execution on which the levy and return were made. We may look likewise at the different executions that have been issued for the purpose of determining if by the law such levy and return can be sustained. The execution by which the levy was made and on which- the return was made, that the motion sought to quash issued from the clerk’s office of the county of Bowie on the 4th day of IVIay, 1846. It has the appearance from the beginning to the attestation of the clerk of an original fieri facias execution. In no single partieu-. lar is it different from the one that ought to have been the first issued' on the judgment, and the judgment to which it refers was rendered on the 15th day of October, 1844.
By the common law, if no execution was sued out within a year and a day from the judgment, none could be taken out at all, and the plaintiff was compelled to commence a new suit on his judgment and obtain another judgment before he could have execution. This was altered by the statute of Westminster, and the writ of scire facias was given to revive the judgment. The common law was introduced into Texas by the act of congress, approved 20th January, 1840. At the date of the passage of this act, there was no law in force in this country that contravened the common law rule as to the time in which an execution could issue on a judgment, and consequently the common law from that time governed, until altered or modified by statute. The only modification seems to be by the act known as the limitation law, approved 5th February, 1841, by which, if no execution has issued on the judgment within the year from the rendering of the judgment, such judgment may be revived by scire facias or action of debt brought on it, at any time within ten years. If this was the original execution, it was sued out too late and was void, and consequently the levy and return were a nullity. If an execution had been sued out within a year by the common law, it could have been continued to an indefinite term by the issuance of other executions, but these were distinguished as an alias and yyl/uHes, and then by number. The face of the execution showed whether it was the first or not. That this was the common law practice, a reference to any book of forms will show. The mandate in the body of the process of an alias, being the first after the return of the.original, is “you are commanded as yo%i have been before.” To those that succeed, the mandate is, “ you, are commanded as you have been often before.” To test the execution on which the levy and return under consideration were made by these rules, it is subject to two objections: That from its date it is inoperative and void and cannot sustain the *(364) levy; because, if it is an original, it was issued after the expiration of a year from the rendition of the judgment on which it was founded. And secondly, if not an original, it does not show on its face that others had preceded it. There was, however, evidence before the court that this was the fourth execution that had been sued out on the judgment, and it may be contended that it was a mere clerical misprision (the omission to show on the face of these executions their different degrees), for which the plaintiff ought not to suffer any detriment or loss; and how far our liberal statute of amendments will have aided these defects is not presented, as no effort was made to amend. And it may be further urged that as all the executions were before the court, there was sufficient evidence to take the execution last issued from the influence of the limitation of a year from the rendition of the judgment; and if no rights were affected and it was only a question of lien to be kept up by a continuity of executions, we should incline to yield to its influence, although it would be passing over a great irregularity. Great latitude is allowed in England in keeping up the chain of executions. It has been held that it is a clerical duty. The continuance may be kept up after the issuance of the first by making it up on the docket or register, and sometimes, for the purpose of sustaining an execution, he is allowed to make it up nunc pro tunc. There is, however, more necessity for being strictly formal in the different executions with us, than there was in England; because there was no particular right to follow the first and second executions, different from the pluries or third. With us there is a material difference, as will be seen when we examine our statute regulating executions, and this brings us to the consideration of how far the case before us is affected by that statute. The 4th section of the act of 27th January, 1842, provides, “and the defendant, his agent or attorney, in all cases shall have the right to designate the property to be levied on, provided said property shall be in the county where judgment shall have been rendered or to which execution may be issued.” The part of the 17th section of the same act, material-for our purpose, is in the following words: “That upon the day of sale the plaintiff may choose one and the defendant another appraiser, who, after being duly sworn by the sheriff, shall proceed to appraise the property levied on at its fair casli value, and in case said appraisers shall not be able to agree, they shall choose an umpire, who, after being duly sworn in like manner, shall proceed to decide between them; but if either party fail to attend or make his election, either in person or by agent, it shall be the duty of the sheriff to appoint an appraiser or appraisers for the absentee or absentees. The *(365) appraisement shall be reduced to writing and signed by the appraisers or a majority of them. The sheriff or other officer shall then proceed to offer the property so levied on and appraised to the highest bidder for cash, and if the highest sum bid does not amount to two-thirds of the valuation made by the appraisers, there shall be no sale.” In the 12th section of the same act it is provided “ that in case there shall be no sale of property taken in execution, contemplated in the 17th section of this act, it shall be lawful for the sheriff or other officer, after the expiration of three months, to proceed to make a second levy on such property.as the defendant may point out to him, not being the same levied on in the first instance; and in case the property levied on in the second instance, shall not bring two-thirds of its appraised value, then it shall be lawful, after the expiration of three months from the last mentioned sale day, for the plaintiff in the execution, his agent or attorney, to designate such property of the defendant as he may think proper to be levied on, and if the property so levied on shall not bring its full appraised value, there shall be no sale and it shall not be lawful for the sheriff or other officer to levy the same execution on any property of the defendant for the space of twelve months thereafter, after which time the plaintiff may again point out property to be sold, under the provisions above specified, in cases of property pointed out by the plaintiff.” It seems to have been the object of the legislature, in the first place, that the debtor should have the privilege of pointing out such property as he could best spare, or such as he might suppose would pay the debt with the least sacrifice. It was intended further that in no event should property be sold for less than two-thirds of its valuation by the appraisement of disinterested men; and if he thought proper to avail himself of the privilege allowed by law, it would not be until after he had made two efforts to sell property pointed out by himself, that the plaintiff would be permitted to point out such as he might think proper. By comparing the course taken ' on the successive executions issued in the case under our considera- j tion, it will be seen whether the provisions of the statutes were complied with.
The first execution was levied by the sheriff. He returned that he had made the levy on certain land pointed out by the defendants, but that the plaintiff not attending to select an appraiser, he could not get any person to act as an appraiser, and he did not offer the property for sale. A similar return was made on the second and third. Ho ap-praisement was made of the property levied on by them, and no offer to sell. The plaintiff seems to have neither attended the sale for the *(366) purpose of choosing an appraiser, nor was he represented by an agent until the execution was issued under which, it was supposed, his right to designate property had accrued. The first departure from the provisions of the law was by returning on the first execution property levied on and not appraised for the want of appraisers. Ho other property could he levied -on until the first had been discharged by observing and complying with the provisions of the 19th section of the act before cited.
If the defendant in execution fails to exercise the privilege offered to him by law, of pointing out property in the first instance, the course to be pursued by the sheriff is a clear one. He should in that event levy on such as he could find belonging to the' defendant, observing the order pointed out by the statute, first on personal property, excepting slaves, then on unimproved lands, then on slaves, and lastly on improved lands, provided such different kinds of property, belonging to the defendant, could be found in the county; if not, then on such as could be found. Sec. 4, act above. This would be his course if the property levied on and appraised should not sell for two-thirds its appraised value, when he went to make the second levy, provided the defendant failed to point out other property than that first shown and offered for sale; but these are rights that the defendant cannot be deprived of, if he chooses to exercise them. The plaintiff’s right to point out property does not depend on the number of executions that may have been issued, but upon what has been done. If the defendant has had the privilege of twice pointing out property — of appraisement and offer of sale under the same execution, the plaintiff’s right to point out would accrue on the second; when this had occurred, all those facts should appear on the sheriff’s return on the first execution. The execution is always required to be returned to the succeeding term of the court from the time of its issuance. This would give time to make two trials of sale of the property designated by the defendant. If he has not had his privileges on the first execution, he should have them on the succeeding. The return of the levy on the execution last sued out shows that it was made on property pointed out by the plaintiff; the other executions and the return thereon show that he had no right to point out property, because, upon that designated by the defendant and levied on by the first execution, the levy and return are not supported by law, and ought to be quashed. There is some ambiguityin the statute referred to, such as the run of the same execution, when it is obvious that by a literal construction it would be wholly inoperative, as it refers to a period to which the same execution could not *(367) run; all executions by the same act being made returnable to tbe succeeding term of the court. It must be understood, then, to mean in such cases, execution on the same judgment.
It will be seen that it is more important under our laws that strict regard should be paid to the grade of the execution, and the special manner in which it has been executed, than in England, because different rights depend on them. JSTow in case the defendant chooses to exercise his rights, in no event could the plaintiff have a right to point out on the first execution; at what subsequent stage he could do so depends altogether upon what had previously been done. In all the other cases depending on a similar motion, the irregularity is still greater than in this, as in this case the sheriff made a return, unknown to the law it is true, but it had given some effect to the process; it had been levied and that levy attached a lien, until discharged by the due course of law; that is to say, until there had been an' offer to sell under an appraisement, and a failure, and other property levied on. But in all the other cases against the defendants, there had been no return at all until the return on the fourth execution. To refer to an execution in another suit, and say the same return, cannot be recognized as a return. Seldom has a case been presented in which so many irregularities appear to have been committed by the cleric and sheriff. Because, therefore, the motion to quash the levy and return of the sheriff in this case ought to have been sustained, the judgment of the court below is reversed and the cause is remanded, with in-strutions to the court below to enter a judgment in the said motion, quashing the levy and return made by the sheriff.
[The cases of Scott & Rose v. Tarrant, the Same v. Martin, the Same v. Latimer, and the Same v. Young, depending upon the same principles, were submitted to the court upon the argument made in this case, and the same judgment was rendered in each.]
Reporters.