CHARLES A. RUSSELL v. McCAMPBELL & FAUNT LE ROY.

Upon the principle ruled in *Foster & Co.* v. *Champlin, ante* p. 22, it *is* no ob-jection that an appeal bond is not under seal. (Paschal's Dig., Art. 5087, Note 1114.)

The 12th section of the act of 27th January, 1842, about executions, reads as follows: "Whenever final judgment shall be rendered by any of the courts of record of this Republic, it shall operate as a lien on all the real estate of the defendant, situate and being in the same county where the judgment is rendered, from the day of the date of the judgment: *Provided*, That said lien shall cease to operate if execution be not issued out within twelve months from the date of the judgment. (Paschal's Dig., Art. 3783, Note 873.)

The statute, not the parties, creates the lien, and it cannot be enlarged or extended by agreement of the parties.

By its own terms, a judgment lien was made to operate from the *day* of the date of the judgment for one year, and will be lost, or "will cease to ope-rate," if execution be not issued out within twelve months from the date of the judgment. (Paschal's Dig., Art. 3783, Note 873.)

If execution be stayed twelve months, the lien will still commence at the date of the judgment, and it will cease at the end of twelve months from that date.

The 12th section of the act of 5th February, 1840, reads as follows: "When-ever final judgment shall be rendered by the supreme, district, or county courts of this Republic, it shall operate as a lien on all the property of the defendant, situated and being in the same county where judgment is ren-dered, from the day of the date of the judgment: *Provided*, That said lien shall cease to operate if execution be not issued out within twelve months from the date thereof, and due diligence be not used to collect the same." (Paschal's Dig., Art. 3954, Note 936.) This has been construed to mean, that execution must be issued out continuously from term to term, and if this be not done, the lien will be lost.

Although a judgment lien may take effect at the rendition of the judgment, and continue one year without execution, yet if within one year the de-fendant sell real estate within the county, and no execution be sued out within the year, the lien is lost, and the defendant's sale will hold against a sale by the sheriff, upon an execution issued more than a year after the rendition of the judgment, there being no ingredient of fraud in the sale.

ERROR from Karnes. The case was tried before Hon. JOHN F. McKINNEY, one of the district judges.

This is an action of trespass to try title, brought by the appellees against the appellant, in the district court for the county of Karnes, by petition filed April 6, 1860, for the recovery of a lot in the town of Helena. The plaintiffs claim under a deed executed by the sheriff of Karnes county, dated April 2, 1860, by which the sheriff conveyed the lot in question to the plaintiffs, by virtue of a sale of said property, made by him on the 6th of March, 1860, under an execution issued from the district court of Karnes county, dated December 1, 1859, by virtue of a judgment rendered by said court in favor of Antonio Deedi, against L. S. Owings, on the 21st day of April, 1857.

The defendant claims title by virtue of a deed from L. S. Owings and wife to him, dated February 26, 1858, recorded February 27, 1858.

In support of their claim the plaintiffs read in evidence a judgment rendered by the district court for the county of Karnes, on the 21st day of April, 1857, in favor of Antonio Deedi, against L. S. Owings, for $504 53, with a stay of execution six months; also the following executions issued on said judgment, and the sheriff's returns on the same:

First execution, issued May 19, 1858, returned by the sheriff October 15, 1858, "No property found."

Second execution, issued January 24, 1859, returned by the sheriff April 12, 1859, "No property found."

Third execution, dated May 7, 1859. Marked by the clerk, "Issued same day." This execution was never delivered to the sheriff. There is no return of the sheriff on it.

Fourth execution, issued December, 29, 1859. Under this execution the property in question was sold on the 6th of March, 1860, and purchased by the plaintiffs. They also read in evidence the deed, executed by the sheriff by virtue of said sale, dated April 2, 1860.

The defendant (appellant) read in evidence a deed for the lot in question, made to him by L. S. Owings and wife,

dated February 26, 1858, filed for record February 27, and recorded March 8, 1858.

The real point in the case was, that more than twelve months elapsed after the rendition of the judgment before the issuance of the first execution, whereby the lien was lost. And the question was, whether the agreement to stay the execution did not postpone the lien for six months, and thus prevent the necessity of an execution for eighteen months after the actual rendition of the judgment.

There were questions of practice growing out of instructions and motions to exclude evidence; but the case turned purely upon the strength of the titles.

*Holts & Finlay*, for the appellant, cited the 12th section of the execution law of 1842. (Paschal's Dig., Art. 3783, Note 873.)

The judgment was rendered April 21, 1857, and the first execution issued May 19, 1858. More than twelve months having intervened between the rendition of the judgment and the issuance of the first execution, the lien (in the language of the statute) had ceased to operate. The conveyance to the defendant having been made on the 27th February, 1858, conveyed all the right of the vendor, subject alone to the lien of the plaintiff in said judgment, and the moment his lien ceased, by his failure to issue execution, the defendant's right became fixed, perfect, and complete, released and discharged from all claim under said judgment.

In answer to this position, we are told that the judgment was rendered with a stay of execution for six months; that the lien of the judgment was preserved by the issuance of execution within twelve months after the stay of execution expired.

"The lien of a judgment or decree, and its extent and operation, is fixed and ascertained by law, and can, in our judgment, be extended no further than the limits prescribed

by the statute, whether it be attempted so to carry it further by a court or otherwise." (Castro v. Illies, 13 Tex., 236.)

By the terms of the statute the lien took effect at the date of the judgment, but ceased at the expiration of twelve months. If execution were not issued, by the terms of the statute the lien was lost. Was it preserved by the agreement to stay execution? We believe not. The judgment was final and complete on the 21st April, 1857, and no agreement, or even judgment of court, as shown by the case above cited, can alter or change the force, extent, or effect of the lien, as determined by the statute. A lien other than the one provided by the statute would not be a statutory lien, but one agreed by the parties, and therefore void. Should the court hold that the issuance of execution within twelve months after the expiration of the stay of execution was a sufficient compliance with the statute to secure and preserve the lien, we further hold, that the lien was subsequently lost by the failure of the plaintiff in said judgment to issue execution from term to term, after the return of the first, by which the defendant's title was relieved from the incumbrance of said judgment.

The lien from the date of the judgment has two conditions annexed: the issuance of execution within the year, and due diligence in collecting the same. The lien is given by the observance of the first, but can only be retained by the latter. Diligence consists in the issuance of execution to each term of the court after the return of the first. (Bennett v. Gamble, 1 Tex., 124; Hall v. McCormick, 7 Tex., 269; Scott v. Allen, 1 Tex., 514; Fessenden v. Barrett, 9 Tex., 475; Graves v. Hall, 13 Tex., 379.)

*C. A. Russel* also filed a written argument on the same side.

*Albert N. Mills*, for the appellees.—The judgment under which the sheriff's sale was made was rendered April 21, 1857, with a stay for six months; execution issued May

19, 1858; the deed of the judgment debtor to Russell, February 26, 1858.

Both parties claim under Owings, the debtor; and no authority is cited by counsel to show that a plaintiff in trespass to try title must deraign title from the sovereignty, where both sides claim under the same party, as in the case in hand.

The act defining the lien of judgments, cited by appellant, was repealed by act which took effect March 17, 1842. (Hart. Dig., Art. 1624.)

The necessity of "due diligence to collect the same," in the act of February 5, 1840, was excluded from the act of 1842. (Mercein v. Burton, 17 Tex., 210; Sayles' Prac., § 650.)

[The sections here referred to are in Paschal's Dig., Arts. 3783, 3954.]

We maintain that the lien of the judgment continued until October 21, 1858, to the end of the six months' stay, and that the appellant had knowledge of it, as a record of the court. The judgment gave the lien, and the contract of the parties continued its operation until October, 1858. Castro v. Illies (13 Tex., 236) is not against this, since there the lower court sought to extend the lien of the decree to other counties than where it was rendered, and also to personal property; and the remark of the court should be confined to the precise facts before it.

The deed from Owings to appellant was February 26, 1858, within twelve months from the date of the judgment and its technical operation was that of a release; it contained no covenant of warranty; the grantee took with the burden; nothing inured to the grantee after the date of the deed, because of the absence of warranty. He took what the debtor had then, and nothing more; and no subsequently-acquired rights or interests in the land, accruing to the debtor in any manner, passed by the deed to the appellant.

The deed could not be set up as an estoppel by the grantee, Russell, against the debtor, Owings, for any right in the same land subsequently acquired, or to which he may have been subsequently remitted by act of law or of the party.

This is the doctrine of estoppel in deed, in the absence of warranty.

We think the lien was in force at the date of the first execution, May 19, 1858, as against appellant's vendor, Owings; and supposing the lien not in legal existence at day of sale, still, under act of 17th March, 1842, (Hart. Dig., Art. 1624,) and the tenor of modern decisions, the sale by the sheriff was good to pass title. (Hancock v. Metz, 15 Tex., 205; Sydnor v. Roberts, 13 Tex., 598; Andrews v. Richardson, 21 Tex., 288, 296.)

We think that Bennett v. Gamble, 1 Tex., 124; Scott v. Rose, 1 Tex., 514; Hall v. McCormick, 7 Tex., 269, and other cases of that class, are overruled by those cited above. Many of the above class were not decided under the act of 1842, but under that of 1840.

We do not believe that execution from term to term must be issued and returned to sustain a lien of this kind, as against one holding the position of the appellant.

Those dealing with a judgment debtor must look to the whole record of the case, and not merely to the judgment. (Riddle v. Bush, Tyler T., May 10, 1864;) [27 Tex., 675; Paschal's Dig., Art. 3954, Note 936.]

If Russell's deed obtain as against the appellees, it must be on the ground of the omission to sue out execution within twelve months from judgment, or failure to issue at every term of the court on the judgment against Owings. Now, as there is no warranty in the deed made before the twelve months expired, how can any subsequent right or estate inure to Russell, by reason of such omission or failure?

SMITH, J.—The motion of the appellees, to dismiss the cause for alleged defects in the appeal bond is refused, for the reasons upon which the decision is based in the case of Foster & Co. v. Champlin & Co., decided at this term. [*Ante,* p. 22.] The appellant and appellees both derive title to the premises in controversy from the same person, L. S. Owings, who appears to have been the owner of the property on the 21st April, 1857, when a judgment was rendered against him for $504 53, in favor of Deedi, with a stay of execution for six months, in the district court of Karnes county, in which the premises are situated.

The first execution was issued on this judgment May 19, 1858, and returned, "No property found."

The second was issued on the 24th January, 1859, and returned, "No property found."

The third, on the 7th May, 1859, upon which no return appears.

The fourth, on the 1st December, 1859, and levied on the house and lot in controversy 21st January, 1860, and sold to the appellees on the 6th March, 1860, for $55.

It appears that Owings and wife, by deed dated 26th February, 1858, conveyed this property to the appellant, C. A. Russell; the deed was duly registered on the 27th February, 1858; and that Russell was in the possession of the premises at the date of the levy and sheriff's sale.

There is no charge of fraud in the purchase made by Russell of Owings, and it will not be denied that his purchase must prevail over that of the appellees, unless the latter title relates back to the date of the judgment, and is made to overreach that of appellant by the lien given by law to the judgment under which they purchased; and the main question in this case appears to be, whether the judgment lien was kept alive, so as to overreach and defeat the purchase of the appellant made in February, 1858.

The court charged the jury, that if the property in controversy was the same sold by the sheriff to the plaintiffs

below, and paid for by them, they must find a verdict in their favor, unless it appear that the property was occupied by Owings and family as their homestead at the date of their sale to Russell. A verdict and judgment were rendered in favor of the appellees, and this ruling of the court is assigned as error. The appellant requested the court to charge the jury, that if it appeared there was more than twelve months' time elapsed between the date of the judgment in favor of Deedi and the issuance of execution, they must find for the defendant below. This instruction the court refused to give, and it is assigned as error.

Art. 1040, O. & W. Dig., reads as follows: "Whenever final judgment shall have been rendered by any of the courts of record of this Republic, it shall operate as a lien on all the real estate of the defendant, situate and being in the same county where the judgment is rendered, from the day of the date of the judgment: *Provided*, That said lien shall cease to operate if execution be not issued out within twelve months from the date of the judgment." [Paschal's Dig., Art. 3783, Note 873.]

The language of the law is explicit, and does not admit of a doubt. We believe the statute, not the parties, creates the lien; and it cannot be enlarged or extended by agreement of the parties, (13 Tex., 229,) and by its own terms is made to operate from the day of the date of the judgment for one year, and will be lost, or "will cease to operate," if execution be not issued out within twelve months from the date of the judgment.

It is contended that the lien dates from the expiration of the stay of the execution. This would do violence to the plain language of the statute itself. And if this were the proper construction to place upon it, then it would be within the power of the parties to tie up the property of the defendant in the judgment for almost any period of time, which the legislature obviously intended not to permit, by requiring execution to be issued within twelve months

after the day of the date of the judgment.  This lien was intended for the benefit of the creditor, to be enforced as prescribed by law, by suing out execution within a year after date of the judgment; and, if he voluntarily consent to interpose a stay of execution, so that he cannot comply with the condition upon which his lien may be preserved, he would be considered as having waived it.

The first execution was issued thirteen months, less two days, after the date of the judgment; and for that reason we are of opinion, that the judgment lien ceased to operate, and could not be again revived, so as to overreach a *bona fide* purchaser from Owings.

In order to preserve this judgment lien, it was provided, in the act of February 5, 1840, (Hart. Dig., Art. 1821,) that execution must be issued within the year, and that due diligence must be used to collect the same; which has been construed to mean, that executions must be issued out continuously from term to term, and without it the lien is lost.  (1 Tex., 508;) [Paschal Dig., Art. 3954, Note 936.]

And we are inclined to the opinion that, although there is no positive provision in the act of 1842 providing, as the act of 1840 did, that due diligence must be used to collect the execution, such is the common law; but it is not now necessary for us to decide that question.  (17 Tex., 620; 13 Tex., 379, 515.)

We are of opinion, that the lien given the judgment of April 21, 1857, was lost and ceased to operate, for the reason that no execution was issued out within twelve months from the date of the judgment; and that the deed of Owings and wife to Russell was anterior to and registered before the appellees purchased at the sheriff's sale in March, 1860, and is the better title, from all that appears from the records in this cause.  And the judgment is reversed and cause remanded for a new trial.

REVERSED AND REMANDED.