## S. M. BARRON v. W. F. THOMPSON.

(Case No. 1126.)

1. JUDGMENT LIEN.— A judgment upon which executions have been regularly issued from time to time as prescribed by law, operates as a lien upon land acquired after the rendition of the judgment in the county in which the judgment is rendered.

2. JUDGMENT LIEN.— Though execution may issue within a year after the rendition of judgment, it does not continue the judgment lien until the judgment becomes dormant, unless due diligence is used to enforce the lien.[1]

APPEAL from Cherokee.   Tried below before the Hon. R. S. Walker.

*S. B. Barron,* for himself.

I. A judgment rendered by the district court in 1861, not allowed to become dormant, and which was recorded in the county clerk's office in the county where rendered, March 9, 1866, operated as a lien on all lands owned by the defendant in the judgment situated in the county at the date of the judgment, and also upon lands acquired after rendition of the judgment.   Pasch. Dig., art. 7005; Moore *v.* Letchford, 35 Tex., 185; Black *v.* Epperson, 40 id., 162; Nicholas & Hester *v.* Crawford, 42 id., 180; Hargrove *v.* DeLyle, 32 id., 170; Thulemeyer *v.* Jones, 37 id., 560; Conrad *v.* Insurance Co., 1 Peters (marg.), 443; Kent's Com., pp. 435, 437; Sugden on Vendors (7th Amer, ed.), 103; Freeman on Judgments, sec. 367; Powell on Mortgages (1st Amer. from 6th Eng. ed.), pp. 473–5, note and authorities there cited; Harris & McHenry (Md.), 449; 1 Md. Ch. Decisions, 459; 1 Blackf. (Ind.), 402; 15 Johns. (N. Y.), 464; 4 W. Va., 608; 31 Ill., 467; Kallock *v.* Jackson, 5 Ga., 153–7; 10 Leigh (Va.), 395; Meyers *v.* Campbell, 12 Mo., 902; Colt *v.* Dubois (S. C. Nebraska, January Term, 1878).

[1] This case did not reach the reporter in time for insertion in 53 Tex., in which volume reference is made to it.

II. An irregularity in the issuance of an execution can only be taken advantage of by the defendant in execution and cannot be attacked collaterally in another suit. Pasch. Dig., art. 13; Boggess *v.* Howard, 40 Tex., 153; Ayers *v.* Duprey, 27 id., 607; Riddle *v.* Bush, 27 id., 675; Hawley *v.* Bullock, 29 id., 224; Portis *v.* Parker, 8 id., 23.

[No briefs for appellee have reached the reporter.]

MOORE, CHIEF JUSTICE.— On the 14th of February, 1878, the appellant, S. B. Barron, instituted this suit in the district court of Cherokee county, against appellee, W. F. Thompson, in the ordinary form of an action of trespass to try title, for the recovery of one hundred and seventy-seven acres of land, the headright of R. R. Jewell. Both parties deraign title from and under T. J. Allen. Appellant under judgment, execution and sheriff's deed, and appellee by mesne conveyances. On the trial in the court below a jury was waived, and the case by agreement of parties was submitted to the court, by whom judgment was rendered for the defendant.

The following brief summary will, it is believed, present the facts upon which the only questions which need be considered will arise: On the 29th of March, 1861, a judgment was rendered by the district court of Cherokee county for one hundred and sixty-one dollars in favor of F. M. Taylor against T. J. Allen and George Waggoner. May 23, 1861, execution issued. Shortly afterwards Waggoner died. The execution was superseded by Allen, by writ of error bond filed September 9, 1861. The plaintiff, F. M. Taylor, died November, 1861, and E. C. Williams qualified as his administrator January 4, 1862. March 9, 1866, judgment of the district court then pending on writ of error in the supreme court was filed and recorded in the office of the clerk of the county court of Cherokee county, in accordance with the act of February 14, 1860, to prevent judgments from becoming dormant,

and to create and preserve judgment liens. April 19, 1867, the supreme court affirmed the judgment of the district court against Allen and his sureties. May 28, 1867, mandate of supreme court issued, and May 10, 1868, was filed in district court. May 12, 1868, second execution issued, but no action seems to have been taken under it. At the spring term of the district court, 1872, Williams resigned and was discharged as administrator, and the October term following James M. Wiggins was appointed administrator *de bonis non*. August 11, 1876, execution issued in favor of Wiggins, administrator, and which was returned not satisfied. November 13, 1876, the fourth execution issued. Under this execution the land in controversy was levied upon by the sheriff and sold as the property of said Allen on the first Tuesday in January, 1877, and purchased by appellant.

The defendant in execution, T. I. Allen, acquired the land in controversy by deed of conveyance from I. K. Williams, assignee in bankruptcy of Austin Jones, of date of November 5, 1868, and conveyed it by deed, February 23, 1871, to E. M. & M. D. Priest. September 17, 1874, M. D. Priest conveyed an undivided interest in it to W. L. Byrd, and on October 30, 1875, W. L. Byrd and E. M. Priest conveyed the entire tract to appellee Thompson.

Upon the facts there arises two questions, one or the other of which must be decided in favor of appellee or the judgment should be reversed. These are: First. Does a judgment upon which executions have been regularly issued from time to time as prescribed by law, operate as a lien upon after-acquired land in the county in which the judgment is rendered? Second. Is the lien of a judgment upon land lost by the failure of the plaintiff to sue out execution for more than a year from the preceding execution?

The first of these questions must, we think, be answered in the affirmative. It has been so decided heretofore by

this court (Thulemeyer v. Jones, 37 Tex., 560), and we see
no reason to doubt or question the correctness of that
decision.   Such a construction of the statute is not, in our
opinion, inconsistent with the language giving final judg-
ments of courts of record "a lien on all the real estate of
the judgment debtor, situated in the county where the
judgment is rendered, from the date of the judgment."
(Pasch. Dig., art. 7005.)   We can see no reason for sup-
posing the legislature intended that a judgment should be
a lien upon lands owned by the debtor at the date of the
judgment, and not upon such as he might subsequently
acquire.   After-acquired property in possession of the
debtor is just as liable to be sold in satisfaction of the
judgment as if it had belonged to him when it was ren-
dered.   And so far as purchasers from the defendant in
execution are concerned, the record of the court showing
the judgment to be unsatisfied, puts them upon notice in
the one case, as fully as in the other.   The only difference
is that the character of examination in the one case must
be more extended than in the other.   That is, the pur-
chaser must inform himself whether there are any valid
unsatisfied judgments against the owner of the land he
contemplates purchasing, in the county where it is situ-
ated, and not merely whether there are any such judg-
ments subsequent to the conveyance of the land to the
vendor.   It has been well settled at common law ever
since, by it, judgments under it have been held to give a
lien upon land, that the lien binds after-acquired land.
4 Kent., pp. 435-7; Freeman on Judgments, sec. 367.   And
so it has been held in most of the American states under
statutes, in some of them at least, not materially dissimi-
lar from ours.   Ridge v. Prather, 1 Blackf., 402; Handly
v. Sydenstricker, 4 W. Va., 608; Wales v. Bogue, 31 Ill.,
467; Kollock v. Jackson, 5 Ga., 153; Ralston v. Field, 32
Ga., 453; Colt v. DuBois, 7 Neb., overruling Filley v.
Duncan, 1 Neb., 134; Trustees v. Watson, 13 Ark., 74;

Steele *v.* Taylor, 1 Minn., 274; Davis *v.* Benton, 2 Sneed, 665; 10 Leigh, 394.

Was the lien of the judgment waived or lost by the neglect of the creditor to enforce it until after the sale of the land by the defendant in execution? This question is in our opinion of much more practical importance and of much greater difficulty of solution.

The record shows that more than eight years elapsed between the issuance of the second and third executions. That during this time Allen, the defendant in execution, acquired the land and owned it for more than three years. After he sold it, more than five years more elapsed before the third execution was issued. During which time the land had more than once been bought and sold by strangers to the judgment. If for such a length of time the judgment plaintiff is excused from any act of diligence whatever in enforcing the general lien which he acquired by his judgment on all the real estate of the defendant in the county, and in all other counties in the state in which he may have recorded his judgment, the lien given by the statute for the security of judgment creditors may be perverted so as to become a most dangerous trap for the unwary as well as most detrimental to the public in general.

The continuance of the lien, as appellant insists, is plainly deducible from, if indeed it is not the obvious import or express declaration of, the act of November 9, 1866, entitled "An act to prevent judgments from becoming dormant and to create and preserve judgment liens." The first section of this act declares, whenever any final judgment shall be rendered by any court of record of this state, it shall be a lien on all the real estate of the judgment debtor situated in the county where the judgment is rendered, and on all the real estate of the judgment debtor situated in any other county of this state, from the time when a transcript of such judgment shall be

filed for record in such other county: *Provided, however,* that said lien shall cease and become inoperative, if execution be not issued within one year from the first day when it might issue.   Now, by this section a lien is given by the rendition of judgment by a court of record in the county where rendered, and by its record in other counties where recorded, which is preserved by the law for one year, and while execution issued within a year is in force. But if it is preserved longer, we must look elsewhere than to this first section to find a warrant for this conclusion.

It is claimed that the lien is indefinitely preserved if execution issue within one year from the date of the judgment by the third section of the act, if ten years is not permitted to elapse between the issuance of executions.   This section reads: "No judgment of a court of record shall become dormant unless ten years shall have elapsed between the issuance of executions thereon." And we readily admit, if the existence or non-existence of a judgment lien is necessarily dependent upon whether or not the judgment is dormant, this conclusion could not be gainsaid.   But certainly this is not the case if it is to be determined by our former statutes or the previous decisions of this court.   By the act of January, 1839, for the collection of the amounts due on judgments, it is provided, "That whenever a final judgment shall be rendered by any court of record of this republic, it shall operate as a lien upon the lands of the defendant from the day of the date of the judgment."   Pasch. Dig., art. 3953. The act concerning executions, passed February 5, 1840, gives a like lien on all the property of the defendant situated in the county where the judgment is rendered from its date; provided, that said lien shall cease to operate if execution be not issued out within twelve months from date thereof, and due diligence be not used to collect the same.   "The act of January 27, 1842, to reduce into one and amend the several acts concerning executions, gives

a lien upon all the real estate of the debtor in the county where the judgment is rendered, from the day of its date; *provided*, that such lien shall cease to operate if execution be not issued out within twelve months from the date of the judgment." Now it is evident if the proposition insisted on in behalf of appellant is correct, that judgment liens under the law of 1839 and under that of 1842, if execution issued within a year, should have continued in force, though no diligence had been used to enforce them, until the judgments on which they were dependent became dormant. The court, however, did not so hold. But, on the contrary, says, to give effect to the general lien of the judgment due diligence must be used to collect it.

In the case of Bennett *v.* Gamble, 1 Tex., 124, it is said the lien of a judgment is lost by the failure to enforce it. That the plaintiff will not be permitted to hang back on his judgment for nearly three years after the first execution, and still retain his lien. This case, it is true, was governed by the law of 1840, but the principle that due diligence must be used to enforce the lien, or it will be lost, as against a purchaser from the judgment debtor, is clearly recognized as a principle of the common law. In the case of Towns *v.* Harris, 13 Tex., 507, where the law of 1839 seems to have been in force when the first execution issued, the court says: "Admitting that some of these judgments had a lien on the land sued for when obtained, yet it is very clear that these liens were lost by negligence in not seeking satisfaction with reasonable diligence." Yet the delay in that case was certainly much less than in this. In the case of Russell *v.* McCampbell, 29 Tex., 31, where the execution issued under the act of 1842, the court expresses the opinion that by the common law due diligence must be used to collect the execution, to entitle the plaintiff to the judgment lien. This principle was not absolutely essential to the decision of the case on

another ground, but still it was pertinent to it, and might have controlled its determination without adverting to the other ground upon which it seems to be more directly placed, if the court had thought fit. It cannot therefore be regarded as merely *dicta*. But be that as it may, the other ground upon which it is claimed that it was decided is more directly applicable to the particular question which we are considering. The judgment was entered against the defendant, with a stay of execution for six months. Execution issued within less than twelve months from the expiration of the stay, but not within that time from the date of the judgment. The court held the lien lost, yet there was no pretense that the judgment was dormant. Execution issued within the proper time to prevent dormancy, and subsequently from time to time. But the lien was lost because not issued within the year from the date of the judgment, as well as by reason of the subsequent want of diligence in not enforcing the executions which were issued. For the want of diligence which loses the judgment lien, may be manifested by the use made of the execution when issued, as well as by the failure to have it issued.

But if there is any doubt in view of these statutes and the decisions upon them, whether the lien is preserved until the judgment is suffered to become dormant, this doubt is dissipated by subsequent statutes and decisions. The act to prevent judgments from becoming dormant, and to create and preserve judgment liens, of February 14, 1860, provided that "whenever judgment shall be rendered an execution may be issued thereon by the court or clerk, that said judgment shall not become dormant unless ten years shall have elapsed between the issuance of executions thereon." But the mere judgment does not of itself operate as a lien. This is only acquired by the record of a transcript of the judgment in the office of the county clerk of the county in which it is desired to have it

operate as a lien.    And the lien when thus acquired continues merely for four years unless the judgment is reinscribed or recorded.    Pasch. Dig., pp. 671–2.    Thus it will be seen, that though the judgment may be dormant, the lien may be preserved by the recording of the transcript, and while the judgment may be in full force and vigor, the lien, if acquired, may be lost.    Jackson v. Butler, 47 Tex., 424; Black v. Epperson, 40 Tex., 163.

Construing the act of 1866, in force when the judgment against Allen fixed a lien upon the land in controversy, in the light of previous legislation to which we have referred, and the former decisions of this court which have been cited, we are constrained to say that in our opinion the third section of the act which prevents judgments from becoming dormant until ten years shall be suffered to elapse between the issuance of executions, gives us no aid in the construction of the first section which creates and preserves the judgment liens.    This first section in unmistakable terms creates a lien on the real estate of the debtor in the county where it is rendered from the date of the judgment, and in any other county in which it may be recorded from the date of such record, and preserves it from loss, at the expiration of twelve months from the date of judgment, by the issuance of execution within that time.    But how much longer the lien thus preserved shall continue in force is not indicated in this or any other section of the act.    Its subsequent continuance depends on the facts of each particular case, and must be determined by the rules and principles of law applicable to them.    And while we doubt not that many unguarded expressions and even well considered decisions may be found in some of the courts of our sister states, which hold that liens continue where execution issues within a year until the judgment is suffered to become dormant, it does not do so with us, as has been settled by our former decisions, unless due diligence be used to en-

force such lien.   The statute under which this case must be decided was enacted in view of these previous decisions and should be construed and interpreted by them.   Doing this, there can be no hesitancy in saying the failure of the plaintiff to sue out execution. on his judgment for the time shown in the record was such a want of diligence as deprived him of any claim to a lien upon this land previous to its sale by Allen, and long before its subsequent purchase by appellee.

There is no error in the judgment, and it is. therefore affirmed.

AFFIRMED.

[Opinion delivered May 24, 1880.]