MARTHA ANN ADAMS ET AL. V. MILDRED M. CROSBY ET AL.

No. 3349.

1. **Judgment Lien—Statutes Construed—Diligence.**—The rules of diligence established by the decisions under the Act of February 5, 1840 (Hart. Dig., art. 1299), are alike applicable to the Act of 1842 (Pasch. Dig., art. 3783), both acts being silent as to what shall constitute "due diligence to collect" the judgment in order to preserve the judgment lien. Upon the failure to issue execution under the Act of 1842 from term to term the judgment lien ended.

2. **Same.**—In a contest between a prior purchaser from the judgment debtor and a subsequent purchaser under an execution sale, the former can, in protection of his title, urge the loss of the judgment lien relied on by the latter.

APPEAL from Galveston. Tried below before Hon. WM. H. STEWART. The opinion states the case.

*McLemore & Campbell,* for appellants.—The execution act of 1842 creates a lien on real estate of the debtor in the county where the judgment is rendered against him from the date of the judgment, and preserves it from loss, at the expiration of twelve months from the date of the judgment, by issuance of execution within that time. How much longer the lien thus preserved shall continue depends on the facts of each particular case; and under this statute it is not necessary, in order to keep the judgment from becoming dormant and losing its lien, that execution should issue regularly every twelve months from the date of the preceding execution. Black v. Epperson, 40 Texas, 163; Barron v. Thompson, 54 Texas, 235; Boggess v. Howard, 40 Texas, 159; Pasch. Dig., art. 3783.

*Lovejoy & Sampson,* for appellees.—The lien created by the execution act of 1842, which was the law in force at the date of the rendition of the judgment against Watrous, under which appellants claim title, was lost by the want of due diligence to preserve it. The failure of allowing one term of the court to elapse, or at least to issue an execution within twelve months from the date of the day of the preceding one, is not exercising that diligence which will preserve the judgment lien. Scott & Rose v. Allen, 1 Texas, 514; Bennett v. Gamble, 1 Texas, 124; Shapard v. Bailleul, 3 Texas, 30; Hall v. McCormick, 7 Texas, 269; Fessenden v. Barrett, 9 Texas, 475; Graves v. Hall, 13 Texas, 379; De Witt v. Jones, 17 Texas, 623; Russell v. McCampbell, 29 Texas, 31; Bassett v. Proetzel, 53 Texas, 569; Sampson v. Wyett, 49 Texas, 627; Barron v. Thompson, 54 Texas, 235; Williams & Guyon v. Davis, 56 Texas, 250; Masterson v. Cundiff, 58 Texas, 473; Anthony v. Taylor, 68 Texas, 403; Wylie v. Posey, 71 Texas, 34.

FISHER, JUDGE, *Section B.*—This is a suit of trespass to try title, by appellees against appellants, for three tracts of land, described as lot

421 in section 1, and lots 201 and 202 in section 2, Galveston Island. Both parties to the suit claim title through John C. Watrous, who is admitted as common source.

Appellants' title relied upon consists of:

1. Judgment obtained on the 9th day of June, 1854, by Joseph Moreland, against John C. Watrous, in the District Court of Galveston County, for $1056.05.

2. Execution issued on this judgment July 21, 1854, which was received by the sheriff of Galveston County July 25, 1854, and returned August 12, 1854, "no property found."

3. Another execution was issued July 23, 1855, and received by the sheriff July 25, 1855, and levied on the property in controversy, which was sold under this execution to C. B. Adams, the first Tuesday in November, 1855.

4. Deed from the sheriff to C. B. Adams, dated November 6, 1855.

5. Appellants claim and assert title as the sole heirs of C. B. Adams.

Appellees rely upon the following title:

1. Power of attorney from John C. Watrous to Henry Martin.

2. Deed executed February 21, 1855, by Henry Martin, as attorney in fact of John C. Watrous, conveying the land to William R. Smith.

3. Appellees deraign title from and under Smith.

The court below rendered judgment in favor of appellees for the land. The court in effect held, that as more than twelve months elapsed from the date of the issuance of the first execution on July 21, 1854, to the day of the issuance of the second execution, July 23, 1855, the lien created by reason of the rendition of the judgment was lost, and that the title executed to Smith, February 21, 1855, by the agent of Watrous, was superior to that of appellants acquired under the execution sale of November, 1855. This finding of the court presents the only question that we determine in disposing of the case.

It is contended by appellants, that the execution act of 1842 creates a lien on the real estate of the debtor in the county where the judgment is rendered from the date of the rendition thereof; and that to preserve the lien issuance of execution is only required within twelve months from the date of the rendition of the judgment; that the law in preserving the judgment from becoming dormant and preserving its lien does not require as an act of diligence that executions shall issue within every twelve months from the date of issuance of the preceding execution; that the diligence required in issuing executions in order to preserve the judgment lien depends upon the facts of each particular case, and that the facts of this case show diligence in this respect; that if the Act of 1842 requires that executions shall be issued every twelve months in order to preserve the judgment lien, that it is diligence if the second execution was issued within twelve months from the date of the return of the first; that the time should commence to

run from the date of the return of the writ, and not from the date of its issuance; that the issuance of the first execution preserved the judgment lien for twelve months; that the purchase by Smith, in February, 1855, was when this lien was existing, and that by purchasing at said time he only acquired such right as Watrous had, and that his purchase was subject to the lien of the judgment against Watrous; and that as Watrous could not in an ordinary action of trespass to try title defeat the execution sale, for this reason it is equally as binding on Smith. This in substance presents the views of appellants concerning the merits of this case.

The Act of 1842, Paschal's Digest, article 3783, creates a lien on all the real estate of the debtor situated in the county where the judgment is rendered. This lien operates from the date of the judgment, provided that it shall cease to operate if execution be not issued within twelve months from the date thereof. The difference between this act of the Legislature and that of February 5, 1840, is, that the latter, after providing that execution shall issue within twelve months in order to preserve the judgment lien, also requires that thereafter "due diligence shall be used to collect same." In determining the degree of diligence that should be exercised by the judgment creditor under the Act of 1840 in collecting his judgment in order to keep alive the lien, this court has in several cases held, that execution must be issued out continuously from time to time. Bennett v. Gamble, 1 Texas, 125; Scott v. Allen, 1 Texas, 514; Hall v. McCormick, 7 Texas, 269; Graves v. Hall, 13 Texas, 380; Riddle v. Bush, 27 Texas, 677; De Witt v. Jones, 17 Texas, 623; Russell v. McCampbell, 29 Texas, 37. While the Act of 1842 does not in express terms require that diligence shall be used by the creditor in collecting his judgment in order to preserve its lien other than the issuance of execution within twelve months from the date of the rendition of the judgment, we nevertheless are of the opinion that it was the purpose of the law to require the exercise of diligence by the judgment creditor in this respect in order to preserve the lien. This court, in the case of Russell v. McCampbell, 29 Texas, 39, in passing upon this question, say: "We are inclined to the opinion, that although there is no positive provision in the Act of 1842 providing, as the Act of 1840 did, that due diligence must be used to collect the execution, such is the common law." Although the court in this case say that it is not necessary that this question should be decided, the case on this question is cited with approval by this court in the later case of Barron v. Thompson, 54 Texas, 241, and say that the opinion quoted can not be regarded as mere dicta. If the courts under the Act of 1840, in the absence of a legislative definition of the degree of diligence required of the creditor in preserving his judgment lien, have determined that diligence consisted in the issuance of executions from time to time, then we think that the exercise of like diligence is re-

quired under the Act of 1842. The rule of diligence established by the decisions under the Act of 1840 is alike applicable to the Act of 1842, both acts being silent as to what shall constitute "due diligence to collect." We are of opinion that failure to issue execution under the Act of 1842 from time to time is fatal to the judgment lien.

In a contest between a prior purchaser from the judgment debtor and a subsequent purchaser under an execution sale, the former can, in protection of his title, urge the loss of the judgment lien relied on by the latter. Gruner v. Westin, 66 Texas, 217.

We conclude the case should be affirmed, and so report it.

STAYTON, CHIEF JUSTICE.—This opinion is affirmed in view of the former utterances of this court, which have no doubt been understood to settle the law upon the question.

*Affirmed.*

Delivered March 22, 1892.